**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FILED by _gme_ D.C.

OCT 23 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ONE CONDOMINIUM APARTMENT
DESCRIBED AS UNIT 2911, JADE
RESIDENCES AT BRICKELL BAY,
LOCATED AT 1331 BRICKELL BAY
DRIVE, MIAMI, WITH ALL
APPURTENANCES AND
IMPROVEMENTS THEREON,

    Defendant-in-rem.

CIVIL NO. **12 - 23855**

**CIV - HUCK**

**JURY TRIAL REQUESTED**   MAGISTRATE JUDGE
BANDSTRA

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, United States of America, brings this complaint in accordance with

Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims

and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

This is a civil action to forfeit and condemn to the use and benefit of the United States of

America property involved in violations of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1956(h) and 1957 that

are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**JURISDICTION AND VENUE**

This Court has jurisdiction over an action commenced by the United States under

28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b), as the acts or omissions giving rise to the forfeiture occurred in this district, and the property subject to forfeiture is located in this district.

## THE DEFENDANT-IN-REM

The defendant-in-rem property consists of One Condominium Apartment Described as Unit 2911, Jade Residences at Brickell Bay, Located at 1331 Brickell Bay Drive, Miami, Florida, with All Appurtenances and Improvements Thereon.

## FACTS

1.      In or about December 2011, special agents of the Drug Enforcement Administration (hereafter "DEA") St. Louis Division, began an investigation into the drug trafficking and related money laundering activities of the CIFUENTES-VILLA Family Drug Trafficking Organization ("CIFUENTES-VILLA FDTO") operating in Colombia, Mexico, Ecuador, and elsewhere throughout Central and South America. The CIFUENTES-VILLA FDTO is comprised of family members with different roles, including brothers JORGE, FRANCISCO and FERNANDO.

2.      The investigation has revealed that FRANCISCO and his brother JORGE began their drug trafficking careers in Colombia in the late 1970's or early 1980's transporting cocaine aboard trucks for Efraín Hernández-Ramírez, a.k.a. "Don Efra" ("DON EFRA"), a founder of the notorious Colombian drug Cartel Del Norte Del Valle, and receiving Don Efra's cocaine shipments destined for the United States in Mexico.

3.      The CIFUENTES-VILLA FDTO primarily supplies cocaine to Joaquín GUZMAN-LOERA, a.k.a. "Chapo" (hereinafter "GUZMAN-LOERA"), head of the Sinaloa

2

Drug Cartel in Mexico. The drugs supplied by the CIFUENTES-VILLA FDTO are imported into the United States through the use of aircraft, motor vessels, and other means of transportation.

4.      Among other things, JORGE was responsible for laundering the drug proceeds of the CIFUENTES-VILLA FDTO. To this effect, JORGE set up businesses using aliases and the names of family members, and used fictitious or shell companies, including real estate, coffee, money remitting, aviation and internet businesses, in order to conceal the drug proceeds. To date, law enforcement agents have identified at least 70 different business names associated with the CIFUENTES-VILLA FDTO.

5.      As part of his role, JORGE oversaw the complex movement of money intended to conceal the CIFUENTES-VILLA FDTO drug proceeds and to purchase aircraft and other property used in the drug trade.

6.      JORGE was also in charge of settling the debts incurred by the CIFUENTES-VILLA FDTO. For instance, after his brother FERNANDO was murdered in November 1996, JORGE's brother FRANCISCO was kidnapped by members of a Colombian paramilitary group who demanded satisfaction of an outstanding $40 million debt incurred by FERNANDO. In order to satisfy a portion of the debt, JORGE liquidated several pieces of property.

7.      Following FERNANDO's murder, JORGE traveled continuously and eventually moved from Colombia to Mexico. Thereafter, JORGE adopted several aliases including Sergio OSUNA-VILLAREAL ("OSUNA-VILLAREAL").

8.    On November 19, 1996, a few days after his brother FERNANDO was murdered, JORGE, using the OSUNA-VILLAREAL alias, established a private investment company in the British Virgin Islands named Timber Development Ltd. ("TIMBER DEVELOPMENT").

9.    Between January and February of 1997, JORGE authorized the opening of two (2) brokerage accounts at Salomon Smith Barney in the name of TIMBER DEVELOPMENT.  The investigation has revealed that these brokerage accounts at Smith Salomon Barney were continuously used by JORGE to launder the proceeds generated as a result of JORGE's and/or the CIFUENTES-VILLA FDTO's narcotics trafficking.  For instance, the drug proceeds in these brokerage accounts were continuously involved in numerous financial transactions, including the purchase of securities, designed to conceal and disguise the true location, source, ownership and control of the proceeds, and to give the proceeds the appearance of legitimacy.  In or about November 1998, the TIMBER DEVELOPMENT brokerage accounts at Smith Salomon Barney had an approximate net value of $10,741,625.00 in cash and securities.

10.    A third brokerage account opened in the name of TIMBER DEVELOPMENT on September 18, 1998, at Prudential Securities was eventually funded primarily by transfers of the drug proceeds on deposit within the two (2) Salomon Smith Barney accounts.

11.    Brokerage statements for the Prudential Securities account show that between 2000 and 2002, numerous outgoing wire transfers were generated from this account to individuals connected to the CIFUENTES-VILLA FDTO in furtherance of the illegal activities of the organization.

12.    A review of the client statements for all three TIMBER DEVELOPMENT brokerage accounts at Salomon Smith Barney and Prudential Securities shows that throughout

4

their existence, account brokers continuously traded the illicit proceeds by purchasing and selling securities.

13.     The investigation has revealed that JORGE had a close friend and fellow money launderer known as HUMBERTO OJEDA-BARRAZA ("OJEDA-BARRAZA"), a.k.a. "Luis Perez," a.k.a. "Oscar Gonzalez" who resided in Culiacán, in the State of Sinaloa, Mexico. OJEDA-BARRAZA was married to Laura AVILA-BARRAZA ("AVILA-BARRAZA") until his death in or about 1997.

14.     On or about January 19, 2001, AVILA-BARRAZA and two relatives incorporated LaOstriches & Sons Limited ("LAOSTRICHES") in Tortola, British Virgin Islands.  A few days after its incorporation, the majority of the drug proceeds and securities on deposit in the TIMBER DEVELOPMENT Salomon Smith Barney accounts were transferred to a brokerage account in the name of LAOSTRICHES.  In or about September 2002, the drug proceeds on deposit in the Prudential Securities TIMBER DEVELOPMENT account were transferred to a LAOSTRICHES brokerage account.  Thereafter, LAOSTRICHES transferred and layered these illegal proceeds and securities through several brokerage accounts opened in the name of LAOSTRICHES.

15.     Review and analysis of the client statements for the LAOSTRICHES' brokerage accounts show that just as in the three TIMBER DEVELOPMENT brokerage accounts, account brokers continuously traded the LAOSTRICHES' accounts by purchasing and selling securities, and wire transferred a portion of the proceeds into other accounts of business associated with money laundering or JORGE.

16.     The last two brokerage accounts owned by LAOSTRICHES were held at Wachovia in Miami, FL, before their acquisition by Wells Fargo.  A review of client statements

5

for one of those LAOSTRICHES' brokerage accounts at Wachovia shows that on or about February 17, 2005, a $115,000 check was issued as a deposit to purchase the defendant-in-rem real property.

17.     Thereafter, on or about March 3, 2005, an outgoing wire transfer of $1,085,447 of the illicit proceeds on deposit therein was made to purchase the defendant-in-rem property.

18.     Official property records for Miami-Dade County, FL show that the defendant-in-rem property is titled to Avila Properties, LLC.  According to corporate records for the State of Florida, Avila Properties, LLC was established on February 17, 2005, and its sole managing member and registered agent is HUMBERTO OJEDA ("OJEDA").  OJEDA is the son of OJEDA-BARRAZA and AVILA-BARRAZA.

19.     On April 5, 2012, the U.S. District Court for the Eastern District of Missouri issued seizure warrants authorizing the liquidation of the two LAOSTRICHES brokerage accounts at Wells Fargo Advisors in Miami.  The United States has in its custody and possession $11,071,188.64 product of the liquidation of the LAOSTRICHES' brokerage accounts.

20.     On November 2, 2010, a federal grand jury sitting in the Southern District of Florida indicted JORGE for conspiring to import and distribute multi-ton quantities of cocaine from Colombia to the United States, via Central America, from October 2003 until early 2009, and multiple money laundering charges from October 2003 through June 2007.  JORGE has also been indicted in the Southern District of New York with conspiring from October 2008 up to February 2011 to import cocaine into the United States.  He is currently a fugitive of justice.

**FIRST CLAIM FOR FORFEITURE**
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)

21.     The allegations contained in paragraphs 1 through 20 of this Verified Complaint

for Forfeiture In Rem are incorporated by reference.

22.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any

property, real or personal, involved in a transaction or attempted transaction in violation of

section[] 1956 ..., or any property traceable to such property."

23.     18 U.S.C. § 1956(a)(1)(B)(i) provides in pertinent part that "whoever, knowing

that the property involved in a financial transaction represents the proceeds of some form of

unlawful activity, conducts, or attempts to conduct such a financial transaction which in fact

involves the proceeds of specified unlawful activity knowing that the transaction is designed in

whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the

control of the proceeds of specified unlawful activity" commits an offense against the United

States.

24.     The defendant-in-rem was property that was involved in money laundering

transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or represented proceeds traceable to

such property.

25.     Thus, the defendant-in-rem constitutes property involved in and/or traceable to

money laundering transactions conducted in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is

therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C.

§ 981(a)(1)(A).

## SECOND CLAIM FOR FORFEITURE
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)

26.     The allegations contained in paragraphs 1 through 20 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

27.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956 ... or any property traceable to such property."

28.     18 U.S.C. § 1956(h) provides in pertinent part that any person who conspires to commit any money laundering offense as set forth in 18 U.S.C. §1956 or §1957 commits an offense against the United States.

29.     The defendant-in-rem was property that was involved in a transaction in violation of 18 U.S.C. § 1956(h), or represented proceeds traceable to such property.

30.     Thus, the defendant-in-rem constitutes property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. § 1956(h) and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD FIRST CLAIM FOR FORFEITURE
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)

31.     The allegations contained in paragraphs 1 through 20 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

32.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section ... 1957 ... or any property traceable to such property."

33.     18 U.S.C. § 1957 provides in pertinent part that any "whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity," shall commit an offense against the United States.

34.     The defendant-in-rem was property that was involved in a monetary transaction involving criminally derived property of a value greater than $10,000 and was derived from a specified unlawful activity in violation of 18 U.S.C. § 1957, or represented proceeds traceable to such property.

35.     Thus, the defendant-in-rem constitutes property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. § 1957 and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## RELIEF REQUESTED

The United States does not request authority from the Court to seize the defendant-in-rem real property at this time.  The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

1.  post notice of this Complaint on the defendant-in-rem real property;
2.  serve notice of this action on the owner(s) of the defendant-in-rem real property, along with a copy of this Complaint.

The United States also desires to undertake an appraisal of the defendant-in-rem real property, as provided in 19 U.S.C. § 1606 and requests a writ of entry for the purpose of conducting an inspection, inventory and appraisal of the defendant-in-rem property.  18 U.S.C. § 985(c)(3) provides that, because the United States will post notice of this Complaint on the

defendant-in-rem real property, it is not necessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the defendant-in-rem real property.  18 U.S.C. § 985(b)(2) clearly states that "the filing of a lis pendens and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection."

Therefore, with respect to the defendant-in-rem real property, the United States requests that the Court issue the proposed Writ of Entry attached to this Complaint authorizing the United States Marshals Service or its designee:

(a)     To enter, after prior notice to the occupant(s) or occupants' counsel, if any, the defendant-in-rem real property, including any structures, on one or more occasions during the pendency of this in-rem forfeiture action for the purpose of conducting inspections, inventories, and appraisals of the defendant-in-rem real property, which inspections, inventories and appraisals may include still and video photography;

(b)     To be accompanied on any such occasions by any government or contract personnel selected by the United States Marshals Service for the purpose of conducting inventories of the defendant-in-rem real property; and,

(c)     To be accompanied on any such occasions by any federal, state, and local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry.

Further, with respect to the defendant-in-rem, the United States requests that:

(a)     this matter be scheduled for a jury trial;

(b)     judgment of forfeiture be decreed against the defendant-in-rem;

10

(c)     the defendant-in-rem be disposed of according to law; and

(d)     this Court grant the United States its costs and whatever other relief to which it

may be entitled.

Dated:   October 22, 2012

Respectfully Submitted,

JAIKUMAR RAMASWAMY, Chief
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

Aixa Maldonado-Quiñones
(PR Bar No. 10052)
Trial Attorney
Asset Forfeiture and Money Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 598-2339

11

## VERIFICATION

I, Karin E. Caito, declare under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that I have read the foregoing Complaint for Forfeiture In Rem and that the contents are true to the best of my knowledge and belief.

Executed on October 5, 2012.

Karin E. Caito
Special Agent
Drug Enforcement Administration

12